James C. NIX, Jr., et al.

v.

E. L. PADERICK and Melvin
W. Adams et al.

James C. NIX, Jr., et al.

v.

Bedford C. THAXTON, Jr., et al.

Civ. A. Nos. 74–0349–R, 74–0381–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 13, 1976.

James C. Nix, Jr., pro se.

Oliver W. Hill, Hill, Tucker & Marsh, James W. Benton, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, James C. Nix, Jr., a Virginia prisoner, and plaintiff, Better Richmond Realty & Investment Company (Better Richmond), primarily owned by Mr. Nix, bring this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 seeking monetary and injunctive relief to redress an alleged "taking" of their property by defendants, Consolidated Bank & Trust Company (Bank), Bedford C. Thaxton, Jr., an assistant operations officer of the Bank, and E. L. Paderick and Melvin W. Adams, officials of the Virginia Department of Corrections. Jurisdiction is conferred by 28 U.S.C § 1343(3). This matter comes before the Court on the defendants' motion for summary judgment. The plaintiff has responded to said motion, and the Court deems the matter ripe for disposition.

Mr. Nix, the principal owner and officer of plaintiff, Better Richmond, sought to open a checking account in Better Richmond's name with himself as the authorized drawer. Accordingly, on or about June 28, 1974, he forwarded signature cards and $428.00 in the form of a cashier's check to the Bank as an initial deposit for a functional checking account. The Bank, upon receiving the deposit, sent Mr. Nix a "starter kit" composed of deposit slips and blank checks, which the plaintiff alleges he never received. On or about July 16, 1974, Mr. Nix forwarded $55.00 to the Bank for the purpose of depositing said amount in the Better Richmond checking account. Subsequently, Mr. Nix attempted to make a third deposit by withdrawing funds from his prison account and having those funds forwarded to the Bank. The prison authorities refused to effectuate the transfer, and, upon opening the plaintiff's mail to uncover his relationship with the Bank, advised the Bank that prison regulations forbade inmates from having checking accounts and possessing checks. In accordance with the notice, the Bank refused to honor Mr. Nix's request to withdraw funds from the account, even though the plaintiff advised the Bank that he was willing to authorize a third party to sign the checks for his company, Better Richmond.

Subsequent to the controversy, The Virginia Department of Correction drafted and published Guideline No. 823 (effective January 31, 1975) dealing with inmate checking accounts. Pertinent provisions are as follows:

It is the intent of the Division of Adult Services, Department of Corrections, not to unreasonably disrupt any financial arrangements between inmates assigned to its custody and banks operating in the community outside when it has been determined that action such as permitting an inmate to maintain a checking account is in the best interest of the inmate and the Division of Adult Services . . .

At such time as a personal checking account has been approved, the superintendent will notify the bank in question of the status of the individual requesting said account using the form letter attached to this guideline. All checks, records, and deposit slips will be turned over to the chief accountant or the superintendent at the institution to which the inmate is assigned. Said account will then be the complete responsibility of the inmate with the chief accountant or the superintendent charged only with holding the checkbook, checks, records, and deposit slips in such a place as to make them secure . . .

An inmate may not make check payable to other inmates nor will checks and other potentially negotiable instruments be allowed within an institution. Otherwise, there shall be no prohibition as to whom a check may be sent . . .

No checks, checkbooks, deposit slips, monthly statements or records will be

permitted within any inmate population or in the possession of any inmate.

The Bank alleges that it continues to be ready and willing to provide the plaintiffs with the material necessary for the plaintiffs' maintenance of a checking account with the Bank.

■ The prison authorities have a substantial interest in not allowing money, currency, checks and other negotiable and potentially negotiable instruments inside prison facilities. Such items facilitate gambling, bribery and extortion among the inmate population, and enable inmates to obtain the aid of other inmates in escape attempts. Consistent with these interests, Guideline 823 enables the prison authorities to retain a degree of control over inmate checking accounts so as to restrict the flow of checks and deposit slips in the inmate population. The Guideline does, however, institute procedures that allow inmates to have outside checking accounts. The procedures are reasonable and, accordingly, this Court must reject the plaintiffs' invitation to enjoin their operation.

■■ Since the plaintiffs' claims for equitable relief have been mooted by the availability of checking accounts for inmates under the new prison guidelines, only the plaintiffs' claims for monetary relief for alleged unconstitutional action under the superceded regulations remain. The superceded regulations as interpreted by prison officials allowed only savings accounts to be held outside the institution; all outside checking accounts were banned. The Court need not reach the question of the constitutionality of these provisions, however. A prison official is immune to damages as a consequence of his action if he acts on the good faith belief that what he was doing is constitutionally permissible, even if it should later be established that he has exceeded his constitutional authority. *McCray v. Burrell,* 516 F.2d 357, 370 (4th Cir. 1975); *Skinner v. Spellman,* 480 F.2d 539 (4th Cir. 1973). The two defendants in this case that are officials of

the prison, Mr. Paderick and Mr. Adams, submitted affidavits stating in substance that they were acting in good faith reliance on established prison system standards when they opened Mr. Nix's mail and informed the Bank that Mr. Nix's account was in violation of prison regulations. Since Mr. Nix did not specifically contest the good faith of the officials in either his initial complaint or in his response to the defendants' motion for a summary judgment, the Court must accept the verified representations of the officials as valid. Fed.R.Civ.P. 56(c). Accordingly, the plaintiffs' claims for damages against Mr. Adams and Mr. Paderick must fail.

■ Similarly, the tendered affidavits and the exhibits submitted by the *plaintiffs* show that the Bank and its officials acted in good faith on reliance of the interpretation of the prison regulations tendered to them by prison officials. For example, the plaintiffs tendered as an Exhibit the Bank's letter of July 24, 1974, to Mr. Nix which contained the following provision: "I recently talked to Mr. Adams at the Virginia State Penitentiary and he advised me that persons incarcerated in an institution are not allowed to have checking accounts or write checks . . . .. We are placing a hold on this account until we can obtain a copy of this ruling. We want to extend our banking services to you, however, we are also governed by state law." The affidavits of the prison officials also indicated that the Bank was advised by them of the interpretation of prison regulations as prohibiting inmate checking accounts. The material presented to the Court indicates that the Bank was only seeking to follow this interpretation, and that its actions did not involve malice or bad faith. The plaintiffs have not specifically argued to the contrary. Accordingly, the Court finds that the Bank and Mr. Thaxton acted in good faith. Fed.R.Civ.P. 56(c). The plaintiffs are granted leave, however, to submit additional affidavits in support of a motion to reconsider if they feel this inference improper. Those affidavits must state, from first-

hand knowledge, that the Bank or its agents had improper motives beyond their attempted adherence to prison regulations in withholding the plaintiffs' monies.

An appropriate Order will issue.